NOT YET SCHEDULED FOR ORAL ARGUMENT

# No. 13-5269

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

### PRISON LEGAL NEWS,

*Appellant,*

v.

### CHARLES E. SAMUELS, JR., DIRECTOR,
### FEDERAL BUREAU OF PRISONS,

*Appellee.*

_____

From an Order by the U.S. District Court for the District of Columbia
The Honorable Reggie B. Walton, Judge Presiding
(Case No. 1:05-cv-01812-RBW)

_____

### APPELLANT'S OPENING BRIEF

### (Joint Appendix Filed Separately)

_____

Lance Weber
General Counsel
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
lweber@hrdc-law.org

Ronald G. London
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
ronnielondon@dwt.com

Attorneys for Appellant

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Appellant Prison Legal News hereby certifies pursuant to Circuit Rule 28(a)(1) that:

### A.     Parties and *Amici*

The parties that appeared in the District Court are (1) Plaintiff-Appellant Prison Legal News; and (2) Defendant Harley G. Lappin, prior Director of Federal Bureau of Prisons, who during the course of the litigation had substituted for him by operation of Fed. R. Civ. P. 25(d), Defendant-Appellee Charles E. Samuels, Jr., current director of the Federal Bureau of Prisons.  The Reporters Committee for Freedom of the Press, *et al.*, intend to file as *amici curiae*.

### B.     Rulings Under Review

The ruling under review is *Prison Legal News v. Samuels*, 954 F.Supp.2d 21 (D.D.C. 2013), wherein the district court denied summary judgment to Plaintiff Prison Legal News and granted summary judgment to Defendant Samuels with respect to the release of records under the federal Freedom of Information Act relating to monies paid by the Bureau of Prisons for lawsuits and claims against it.

### C.     Related Cases

Appellant Prison Legal News is not aware of any related cases.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellant Prison Legal News hereby states that it is a project of Human Rights Defense Center, a non-profit organization that has no parent corporation, and that there is no publicly held corporation that owns 10% or more of its stock.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF AUTHORITIES ....................................................v

GLOSSARY.................................................................x

JURISDICTIONAL STATEMENT ...........................................1

ISSUE PRESENTED........................................................2

STATEMENT OF THE CASE...............................................3

STANDARD OF REVIEW ................................................14

SUMMARY OF ARGUMENT ...........................................15

ARGUMENT ..............................................................17

I.     FOIA EXEMPTION 6 HAS NOT BEEN PROPERLY INVOKED
       TO ALLOW BOP TO WITHHOLD INDIVIDUALS' NAMES AND
       RELATED IDENTIFYING INFORMATION.............................20

       A.    The District Court Erred in Summarily Accepting the BOP's
             Broad-Brush Assertion of Privacy Interests.....................23

             1.    Redaction of Personal Information for BOP Personnel
                   Implicates Different Privacy Interests from Redactions
                   Pertaining to Claimants and Witnesses...................24

             2.    The Asserted Privacy Interests of BOP Personnel Against
                   Whom Claims Were Made and Settled Via Payment of
                   Public Funds Cannot Justify Nondisclosure of Their
                   Personal Information.....................................27

             3.    The Privacy Interests of FTCA, EEOC and MSPB
                   Claimants Cannot Justify Categorical Nondisclosure
                   of Personal Information .................................31

iii

B.    The Public Interest in Understanding BOP's Payments
of Public Funds to Remedy, or Forestall Investigation of,
Misconduct by Agency Personnel Outweighs the Privacy
Interests of BOP Personnel, as well as Those of Claimants
and Witnesses in the Majority of Cases .............................................36

1.    The District Court Took Too Narrow a View of the
Public Interest in Identifying Information ...............................36

2.    The District Court Marginalized the Role of Identifying
Information in Investigating and Reporting to the Public
on Agency Operations..............................................................44

II.    FOIA EXEMPTION 7(C) DOES NOT PERMIT WITHHOLDING ..........48

A.    The BOP Did Not Establish that the Redacted Records
Were Compiled for Law Enforcement Purposes ...............................49

B.    The Balancing of Privacy and Public Interests Under
Exemption 7(C) Compels Disclosure for the Same
Reasons as are Applicable Under Exemption 6 ................................51

CONCLUSION ...................................................................................................54

ADDENDUM OF PERTINENT STATUTES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU v. DOJ*,
  655 F.3d 1 (D.C. Cir. 2011)............................................................30, 40, 45, 47

*Arieff v. Department of Navy*,
  712 F.2d 1462 (D.C. Cir. 1983)............................................................18, 29, 42

*Armstrong v. Executive Office of the President*,
  97 F.3d 575 (D.C. Cir. 1996)....................................................................31, 32

*Baez v. DOJ*,
  647 F.2d 1328 (D.C. Cir. 1980)..........................................................................39

*Beck v. DOJ*,
  997 F.2d 1489 (D.C. Cir. 1993)....................................................................40, 51

*Billington v. DOJ*,
  233 F.3d 581 (D.C. Cir. 2000)..............................................................19, 27, 52

*Brock v. Pierce Cnty.*,
  476 U.S. 253 (1986).............................................................................................42

*Campbell v. DOJ*,
  164 F.3d 20 (D.C. Cir. 1998)....................................................................18, 19

*Carter v. Department of Commerce*,
  830 F.2d 388 (D.C. Cir. 1987)..........................................................................34

*Center for Auto Safety v. EPA*,
  731 F.2d 16 (D.C. Cir. 1984)..............................................................................15

*Center for Int'l Envtl. Law v. USTR*,
  237 F.Supp.2d 17 (D.D.C. 2002)......................................................................18

---

\*   Authorities chiefly relied upon marked with asterisks.

*Citizens for Responsibility & Ethics in Washington v. DOJ,
   __ F.3d ___, 2014 WL 1284811 (D.C. Cir. Apr. 1, 2014) ........ 21, 25, 32, 35-36,
                                                                              38, 40, 49, 53

Coleman v. Lappin,
   680 F.Supp.2d 192 (D.D.C. 2010) ....................................................................39

Coleman v. Lappin,
   607 F.Supp.2d 15 (D.D.C. 2009) .....................................................................14

Crooker v. ATF,
   789 F.2d 64 (D.C. Cir. 1986) .........................................................................49

Department of Air Force v. Rose,
   425 U.S. 352 (1976) ..........................................................................28, 32, 33

Ditlow v. Schultz,
   517 F.2d 166 (D.C. Cir. 1975) .......................................................................19

DOD v. FLRA,
   510 U.S. 487 (1994) .......................................................................................52

DOD v. FLRA,
   964 F.2d 26 (D.C. Cir. 1992) ...................................................................41, 47

DOJ v. Reporters Comm. for Freedom of the Press,
   489 U.S. 749 (1989) ...................................................................18, 36, 46, 53

DOJ v. Tax Analysts,
   492 U.S. 148 (1989) .......................................................................................19

FLRA v. DOT,
   884 F.2d 1446 (D.C. Cir. 1989) .....................................................................47

Hooker v. HHS,
   887 F.Supp.2d 40 (D.D.C. 2012) ...................................................................28

Horowitz v. Peace Corps,
   428 F.3d 271 (D.C. Cir. 2005) .......................................................................25

Jefferson v. DOJ,
   284 F.3d 172 (D.C. Cir. 2002) .......................................................................40

*Judicial Watch, Inc. v. DOJ,*
  365 F.3d 1108 (D.C. Cir. 2004)...........................................................14, 25, 45

*Judicial Watch, Inc. v. U.S. Secret Serv.,*
  726 F.3d 208 (D.C. Cir. 1993).........................................................................15

*Kimberlin v. Quinlan,*
  199 F.3d 496 (D.C. Cir. 1999).........................................................................36

*King v. DOJ,*
  830 F.2d 210 (D.C. Cir. 1987).........................................................................28

*Lardner v. DOJ,*
  638 F.Supp.2d 14 (D.D.C. 2009), *aff'd,* 398 F. App'x 609
  (D.C. Cir. 2010) ................................................................................................42

*Ligorner v. Reno,*
  2 F.Supp.2d 400 (S.D.N.Y. 1998) ...................................................................50

*Lurie v. Department of Army,*
  970 F.Supp. 19 (D.D.C. 1997).........................................................................50

*Martin v. DOJ,*
  488 F.3d 446 (D.C. Cir. 2007).........................................................................52

*McCutcheon v. HHS,*
  30 F.3d 183 (D.C. Cir. 1994)...........................................................................30

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981).........................................................................29

*Morley v. CIA,*
  508 F.3d 1108 (D.C. Cir. 2007).............................................19, 27, 32, 34, 52

*Multi Ag Media LLC v. Department of Agric.,*
  515 F.3d 1224 (D.C. Cir. 2008)...................................................14, 19, 26, 33,
                                                                  38, 43, 47

*National Archives & Records Admin. v. Favish,*
  541 U.S. 172 (2004)....................................................................................45, 52

*National Ass'n of Home Builders v. Norton,*
  309 F.2d 26 (D.C. Cir. 2002).............................................................18, 32, 35

*National Parks & Conservation Ass'n v. Kleppe*,
547 F.2d 673 (D.C. Cir. 1976).......................................................................19, 27

*New York Times Co. v. NASA*,
920 F.2d 1002 (D.C. Cir. 1990) (*en banc*) ........................................................28

*\*News-Press v. DHS*,
489 F.3d 1173 (11th Cir. 2007) ........................................................43, 44, 47, 48

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)..................................................................................................49

*Ortiz v. HHS*,
70 F.3d 729 (2d Cir. 1995) ...................................................................................50

*Pell v. Procunier*,
417 U.S. 817 (1974)..................................................................................................37

*\*Prison Legal News v. Lappin*,
436 F.Supp.2d 17 (D.D.C. 2006)............................................................4, 20, 37

*Prison Legal News v. Lappin*,
603 F.Supp.2d 124 (D.D.C. 2009).........................................................................5

*Prison Legal News v. Lappin*,
780 F.Supp.2d 29 (D.D.C. 2011)..................................................................5, 6, 18

*Prison Legal News v. Samuels*,
954 F.Supp.2d 21 (D.D.C. 2013)................................ 1, 3-5, 7, 13-14, 17, 21-25,
36-40, 46-48

*Providence Journal v. Department of Army*,
981 F.2d 552 (1st Cir. 1992)................................................................................30

*Reed v. NLRB*,
927 F.2d 1249 (D.C. Cir. 1991).........................................................................45

*Schecker v. DOJ*,
349 F.3d 657 (D.C. Cir. 2003)...........................................................................26

*Southern Utah Wilderness Alliance, Inc. v. Hodel*,
680 F.Supp. 37 (D.D.C. 1988)...........................................................................19

*Stern v. FBI*,
    737 F.3d 84 (D.C. Cir. 1984)................................................. 18, 30, 39, 40, 50, 51

*Union Leader Corp. v. DHS*,
    __ F.3d ___, 2014 WL 1613681 (1st Cir. Apr. 18, 2014)............................46, 47

*U.S. Dep't of State v. Ray*,
    502 U.S. 164 (1991).................................................................................45

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973)..........................................................5

*Vento v. IRS*,
    714 F.Supp.2d 137 (D.D.C. 2010).....................................................50

*Washington Post Co. v. DOJ*,
    863 F.2d 96 (D.C. Cir. 1988)....................................................35, 42

*Washington Post Co. v. HHS*,
    690 F.2d 252 (D.C. Cir. 1982).................................................13, 20, 30, 42, 44

*Wilson v. DOT*,
    730 F.Supp.2d 140 (D.D.C. 2010)....................................................25

**Federal Statutes**

28 U.S.C. § 1291...................................................................................1

5 U.S.C. § 552.............................................................................1, 15, 18, 49, 51

**Rules**

F.R.C.P. 25 .........................................................................................1

**Other Authorities**

*Freedom of Information Act*,
    Memorandum for the Heads of Executive Departments and
    Agencies, 74 Fed. Reg. 4683 (2009) .................................................29

ix

# GLOSSARY

| | |
|---|---|
| BOP | Bureau of Prisons |
| EEOC | Equal Employment Opportunity Commission |
| FOIA | Freedom of Information Act |
| FTCA | Federal Tort Claims Act |
| MSPB | Merit Systems Protection Board |
| PLN | Prison Legal News |

## JURISDICTIONAL STATEMENT

The district court had jurisdiction below pursuant to 5 U.S.C. § 552(a)(4)(B) over the complaint filed by Plaintiff-Appellant Prison Legal News ("PLN") on September 13, 2005, against Harley G. Lappin, former Director of the Federal Bureau of Prisons ("BOP" or "the Bureau"),[1] Dkt. 1; JA 43-48, to compel BOP to produce records under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* ("FOIA").

This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's July 23, 2013, final Memorandum Opinion and Order in *PLN IV*, 954 F.Supp.2d 21, Dkt. 119; JA 30-42, which denied PLN's Fifth Motion for Summary Judgment, Dkt. 110; JA 239-65, and granted summary judgment to the Bureau on its cross-motion, Dkt. 111; JA 1323-41, and from which PLN timely filed a Notice of Appeal on August 22, 2013 (Dkt. 122).[2]

---

[1] In 2013, the district court substituted BOP Director Charles E. Samuels, Jr., as the defendant in place of former Director Lappin pursuant to F.R.C.P. 25, as reflected in the decision below, *Prison Legal News v. Samuels*, 954 F.Supp.2d 21 n.4 (D.D.C. 2013) ("*PLN IV*"); JA 31-42.

[2] The district court granted a consent motion to extend the deadline for PLN to seek its attorney's fees for succeeding at prior stages in the litigation, until after this Court decides the instant appeal. Dkt. 26.

1

## ISSUE PRESENTED

Whether the district court erred in holding the Bureau of Prisons satisfied its burden under FOIA to withhold names and other identifying information for public employees, tortfeasors, claimants, and witnesses, with respect to claims filed at the Bureau under the Federal Tort Claims Act ("FTCA") or against the Bureau with the Equal Employment Opportunity Commission ("EEOC") or Merit Systems Protection Board ("MSPB"), where the identifying information is necessary to gain insight into agency operations and the performance of government officials with respect to payments of public funds to resolve claims against the Bureau.

2

## STATEMENT OF THE CASE

Our federal prison system, among the largest in the world, is the most populous in the United States, with facilities in almost every state and nearly 200,000 inmates nationwide.  Dkt. 1, Compl. ¶ 10; JA 45.  Prison Legal News ("PLN"), a project of the non-profit Human Rights Defense Center, publishes a legal journal devoted to news and litigation concerning detention facilities.  *Id*. ¶ 5; JA 44.  PLN has published monthly since 1990, had an estimated audience of 36,000 readers as of commencement of this litigation, and counts lawyers, journalists, judges, courts, libraries, and universities among its 4,500 subscribers across all 50 states.  *Id*. ¶ 6.

In furtherance of its mission, which includes investigating and reporting how the federal Bureau of Prisons ("BOP" or "Bureau") resolves claims against it, PLN filed a FOIA request on August 6, 2003 seeking "all documents showing all money paid by [BOP] for lawsuits and claims against it," encompassing:

> all funds paid out … between January 1, 1996 through and including July 31, 2003[, including] a copy of the verdict, settlement or claim in each case showing the [] amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award[, along with] a copy of the complaint (if it was a lawsuit) or the claim (if it was not) ….

Dkt. 119, *PLN IV*, 954 F.Supp.2d at 24; JA 35-36.  PLN also sought a waiver of any fees associated with the request.  Dkt. 1, Compl. ¶ 9; JA 45.  BOP denied the fee waiver, and did not produce any records.  *Id*. ¶¶ 12-14; JA 45, 46.

### PLN's FOIA Suit and Early District Court Litigation

This case commenced in September 2005 as a district court action appealing BOP's denial of the fee waiver and seeking an order for it to produce the records PLN requested. *PLN IV*, 954 F.Supp.2d at 24; JA 35. The court granted summary judgment to PLN on the fee waiver. It found, *inter alia*, that "PLN repeatedly specified how the [] information would benefit the public," and that its FOIA request sought information that would "provide insight to the public about how its federal prisons are [] managed and operated, and how its tax dollars are being expended." *Prison Legal News v. Lappin*, 436 F.Supp.2d 17, 26 (D.D.C. 2006) ("*PLN I*"); JA 57. The court thus held BOP's denial of the fee request was improper, and ordered it to grant PLN a fee waiver and to process its FOIA request. *Id*. at 27; JA 58.

Some ten months later, BOP began producing records, and during the ensuing six months released over 11,000 pages of documents. While no record was withheld in full, 2,993 pages that BOP produced had significant redactions, which BOP sought to justify under several FOIA exemptions, including Exemptions 6 and (7)(C), which allow withholding on privacy grounds. Dkt. 73-3, Suppl. Decl. of Wilson J. Moorer, ¶¶ 1, 7; JA 164, 166. PLN then sought summary judgment on grounds that BOP's search for responsive records was inadequate and that its redactions were improper under the asserted FOIA exemptions; BOP filed a cross-motion for summary judgment with a supporting affidavit. Dkts. 49, 54, 54-1.

4

The district court granted summary judgment to PLN on both grounds. *Prison Legal News v. Lappin*, 603 F.Supp.2d 124 (D.D.C. 2009) ("*PLN II*"); JA 128-33.  It found BOP failed to provide sufficient details to show its search was adequate.  *Id*. at 127; JA 131-32.  It also found BOP failed to "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence … nor by evidence of agency bad faith."  *Id.* at 128; JA 132-33.  The court ordered BOP to "adequately demonstrate[] … that [it] employed [] methods reasonably likely to discover [responsive] records" and to "show[] that [any] responsive documents and parts of [them] not provided … have properly been withheld[.]"  *Id*. at 129; JA 133.

### *Summary Judgment Redux:  The Bureau's Serial Vaughn Indices*

Over a year later, BOP renewed its cross-motion for summary judgment and submitted a new affidavit, this time accompanied by a *Vaughn* index.[3]  PLN again moved for summary judgment.  Among other things, PLN showed BOP still failed

---

[3]  Dkt. 73-3; 73-4; JA 164-80.  As the district court noted, "*Vaughn* indices are a mainstay of FOIA proceedings" that "must adequately describe each withheld document or deletion from a released document, and [] state the exemption claimed for each deletion … , and explain why the exemption is relevant."  *PLN IV*, 954 F.Supp.2d at 25 n.4; JA 36; *Prison Legal News v. Lappin*, 780 F.Supp.2d 29, 39 n.6 (D.D.C. 2011) ("*PLN III*"); JA 227 (both citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)) (all internal quotation and citations omitted).

to adequately justify its invocation of FOIA exemptions for its redactions. Dkt. 78; JA 181-95. The district court accepted BOP's additional showing with respect to the adequacy of its search,[4] but again granted partial summary judgment to PLN.

With respect to the redacted documents, the court found that:

> because the Bureau has not sufficiently established – in any of its filings – that the documents … were compiled for law enforcement purposes or provided the Court any facts from which it could balance the public and private interests at stake in regard to disclosure of the redacted information, [it] cannot categorically conclude that the defendant has properly invoked Exemption 6 or 7(C)[.]

*PLN III*, 780 F.Supp.2d at 44; JA 232. Noting that PLN's "frustration with the long-standing, unresolved status of its FOIA request" was understandable, the court demanded "additional explanation about the relative weight of the competing public and private interests … in a sufficiently detailed manner," and that, "considering the age of this case," BOP provide the explanation without "[f]urther delay." *Id*. at 46; JA 234.

In the wake of the district court's direction, BOP produced – 3 months later – a supplemental filing. *See* Dkt. 85; JA 235-38.[5] This led to PLN's fourth motion

---

4   *PLN III*, 780 F.Supp.2d at 38-39; JA 226-27. This conclusion regarding the adequacy of BOP's search has not been appealed.

5   Dkt. 85-1, the Fourth Supplemental Declaration of Wilson J. Moorer ("Final Moorer Decl."), also was filed with the Bureau's final opposition/cross-motion on summary judgment, where it became Dkt. 111-2; JA 1478-1551. To avoid dupli-

(Footnote continues on next page.)

for summary judgment.  PLN asserted that the supplemental *Vaughn* index still did not sufficiently justify the redactions, Dkt. 93, and noted in particular that, in approximately 2,000 of the 11,000 documents produced to PLN, BOP redacted all names, judicial and administrative case numbers, and large blocks of text.[6]

Rather than opposing PLN's motion or again cross-moving for summary judgment, BOP responded by supplying PLN with revised redactions and, six months after its prior attempt, a Second Supplemental *Vaughn* index.[7]  By then, the parties had negotiated their way to having in issue "only" 102 documents and redactions made under Exemptions 6 and 7(C).  *See, e.g.*, Dkt. 111 at 7; JA 1329. *But see also PLN IV*, 954 F.Supp.2d at 25 n.5; JA 36-37 (suggesting that slightly fewer than 102 documents are in dispute).  However, BOP still withheld across those remaining records all individual names and, to the extent they might reveal individuals' identities, job titles, department descriptions, work addresses, dates of events, dates of employment, religious affiliation, and countries of origin, along

---

cation, only the last-submitted version appears in the Joint Appendix, and all citations here are to that version/docket-entry.

[6]  Dkt. 93-1, Suppl. Decl. of Paul Wright, ¶ 6.  *See* Dkt. 111-2, Final Moorer Decl., ¶¶ 11, 20, 29, 34, 39, 44, 52, 55, 67, 71, 74, 79, 81, 84, 87, 89, 92, 94, 96, 99, 101, 102, 104; JA 1482-84, 1488-89, 1493-94, 1496-97, 1499-1501, 1503-04, 1507-10, 1516-22, 1524-27, 1529-41, 1543-51.

[7]  Dkt. 110-4, Second Suppl. Decl. of Paul Wright ("Final Wright Decl.") & Exs. 1-103, Dkts. 110-5 through 110-107; JA 273-1322.

with, in some cases, whole sentences of text.  Dkt. 110-4, Final Wright Decl.,
¶¶ 4-5; JA 270-71.  *See also, e.g.*, *id*., Exs. 25, Dkt. 110-29, & 40, Dkt. 110-44; JA
546-56; JA 756-71.

### *Final Cross-Motions for Summary Judgment*

PLN thus filed its Fifth Motion for Summary Judgment seeking release of all
records produced in response to the FOIA request, without redaction of any names,
job titles or description, dates of employment or events, or religious affiliations.
Dkt. 110; JA 239-40.  PLN made clear it did not seek other personal information
such as social security or employer ID numbers, phone numbers, home addresses,
bank routing or account numbers, or inmate register numbers.  *Id.* at 1; JA 239.
The motion emphasized that PLN sought only information needed to retrieve
complementary records of claims against BOP and for further research, to facilitate
analysis and reporting on BOP operations.  It also stressed the public interest in
unveiling government misconduct in the form of medical neglect, death, discrimi-
nation, retaliation, harassment, and other constitutional and legal violations.  Dkt.
110-1 at 8-9, 10-11, 13-14, 18; JA 248-51, 253-54, 258.  After nine years of being
denied full access to the records or proper justifications for BOP's redactions, PLN
argued that the *Vaughn* indices remained inadequate, as they did not demonstrate
with reasonably specific detail that the justifications for nondisclosure logically fell
within Exemptions 6 or 7(C), as the district court had ordered.  *Id.*

8

In this regard, the final declarations and *Vaughn* indices BOP relied upon, even taken together, failed to improve on previous iterations. For example, the virtually identical Fourth and Third *Vaughn* indices parroted the same statutory language as justification for withholding personal information.[8] They also failed to provide specific factual bases for why the privacy interests of a tortfeasor, witness, or claimant should be protected over the public's interest in understanding the use of taxpayer dollars to settle claims against agency employees and officials.

Significantly, of the BOP records still in dispute, many pertain to discrimination claims, racial or gender-based harassment, and mundane personal injuries, such as salmonella, eye injuries, and the like. Only a relative few of the records cover anything arguably more personally sensitive, such as suicide attempts, death of an inmate, or sexual abuse (which, in the case of the latter, involved a single case implicating only 14 of the 2,000-plus total pages). BOP continued to attempt to justify these redactions through "rationales" that did little more than repeat the legal standards that disclosure "would constitute a clearly unwarranted invasion of

---

[8]   *Compare* Dkt. 110-107, Final Wright Decl., Ex. 103 (attaching penultimate Stroble declaration); JA 1313-22, *with* Dkt 111-1, Decl. of Clinton Stroble and *Vaughn* Index; JA 1342-1477 ("Final Stroble Decl." & "Final *Vaughn* Index," respectively). The only difference between the indices was the removal of references to "Exemption b(2) low" as a justification for withholding information.

personal privacy" while making "no contribution to the public understanding of a government function."  Dkt. 111-1, Final *Vaughn* Index; JA 1349-1477.

More specifically, BOP's declaration, for its part, covered various FTCA, EEOC and MSPB forms and other documents categorically, and gave the same short-hand "analysis" of how the redactions assertedly satisfied Exemptions 6 and 7(C).  Specifically, for every category of redacted personal information still in issue, the declaration stated in relevant part that "Exemption 6 was deemed applicable because the information redacted applied to a particular, identifiable individual," and that as "such claims are not filed in a claimant's official capacity, there was an initial determination that the … claim is personal in nature."[9]

The declaration then went on to state, identically for each category, that the fact that a claim was filed discloses, as to tort claims, that specific individuals suffered injury, loss or death, or some loss incident to BOP employment, or that, for EEOC or MSPB claims respectively, that an individual alleged having suffered discrimination or some adverse or unfair employment impact.  *Id*.  For tort claims, the declaration added that "since only [] claims involving payment were requested,

---

[9]  Dkt. 111-2, Final Moorer Decl., ¶¶ 11, 20, 29, 34, 39, 44, 52, 55, 62, 71, 79, 81, 84, 87, 89, 92, 94, 96, 97, 99, 101, 102, 104; JA 1482-84, 1488-89, 1493-94, 1496-97, 1499-1501, 1503-04, 1507-10, 1516-17, 1518-22, 1524-27, 1529-41, 1543-51.

the revelation of a specified amount … paid was [] a factor," as was "the fact that it is not unusual or uncommon for an individual to be stigmatized by the filing of claims, regardless of whether the stigma has merit."[10]

This series of statements was repeated for every type of claim and every record in which they appeared.  No attempt was made to analyze the particular harms individuals suffered or alleged, or why each and every harm, regardless of its nature, invoked a privacy interest, and if so, the contours of that interest.  No recognition was given at all to the possibility that differing injuries, forms of discrimination, or adverse employment actions implicate different privacy interests.

The declaration effectively repeated this series of verbatim recitations for purposes of Exemption 7(C) as well,[11] and similarly offered a series of verbatim "analyses" under the Exemptions' public interest prongs.[12]  In each case, the declaration summarily concluded that the redacted information would not directly

---

[10]  *See, e.g.*, *id.* at 6, 11-12, 16-17; JA 1483, 1488-89, 1493-94.  Though the same would arguably be true for paid-out EEOC and MSPB claims, BOP did not state as much as to those claims.

[11]  *See, e.g.*, *id.* ¶¶ 12, 14, 16, 18, 21, 23, 27 ("The potential illumination of agency action is too attenuated and there existed no evidence which would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."); JA 1484-92.

[12]  *See, e.g.*, *id.* ¶¶ 12, 21, 30, 35 ("disclosure of names would not contribute to [] public understanding of government functions"); JA 1484, 1489, 1494, 1497-98.

reveal the operations or activities of the government, or contribute to the public's understanding of government functions, and that the information fell outside the ambit of the public interest FOIA was enacted to serve. *Id*.

The Bureau's Final *Vaughn* index was even terser in its treatment of the redactions in many respects. Though each redacted record appeared on the index individually, no real effort was made to apply the legal standards to the facts of each document, or to explain the balancing of private and public interests that Exemptions 6 and 7(C) require. *See generally* Dkt. 111-1, Final *Vaughn* Index; JA 1349-1477, *passim*. Rather, the same kind of verbatim, summary-level "justifications" were provided for each redaction. *Id*.

And while the *Vaughn* index – unlike the declarations – acknowledged that the redactions covered not just FTCA claimants and EEOC and MSPB complainants, but also BOP personnel who engaged in or were accused of wrongdoing, no greater effort was made to justify the redactions on a case-by-case basis. *See, e.g.*, *id*. at 12, 15-17; JA 1353, 1356-58. Instead, the index repeated nearly verbatim statements that revealing the names of staff members alleged to have engaged in misconduct (or to have witnessed it) would constitute a clearly unwarranted invasion of personal privacy, regardless of whether the charges were sustained. *Id*.

Even taken together, the declarations and index failed to provide any context as to why, for instance, the privacy interests of a BOP employee accused of discri-

12

minatory conduct should be treated the same as an inmate alleging sexual abuse.
Nor did they attempt to explain why *any* of the privacy interests prevailed over the
public's interest in better understanding official misconduct at the BOP, the after-
math of the tortious conduct, and the resulting cost to taxpayers.

All told, BOP made clear that its redactions beyond individuals' names were
based solely on the extent to which such ancillary information could allow identifi-
cation of the individuals whose names were withheld.  *See*, *e.g.*, *id*. at 6; JA 1347
(discussing "essential issue" in dispute); Dkt. 117 at 2.   In cross-moving for
summary judgment, the Bureau continued to argue the identities withheld would
not reveal anything relating to BOP's conduct or offer understanding of its opera-
tions, but rather that disclosure assertedly would "embarrass" or even "intimidate"
the individuals at issue.  Dkt. 111 at 6-7; JA 1334-35.

### *Order on Appeal*

In the order on appeal, the district court granted BOP's cross-motion for
summary judgment.  *PLN IV*, 954 F.Supp.2d 21; JA 31-42.  It concluded that
because the requested information involved individuals' names and identifying
information, it was subject to FOIA Exemption 6.  *Id*. at 28; JA 39.  Applying the
balancing test of whether releasing the information would cause a clearly unwar-
ranted invasion of personal privacy, *id*. (citing *Washington Post Co. v. HHS*, 690
F.2d 252, 260 (D.C. Cir. 1982)), the court found that "[d]ocuments such as these,

13

which associate names and identifying information with personal information about injuries, deaths, and allegations of discrimination, 'easily fall under the purview of an individual's interest in avoiding disclosure of personal matters,' and controlling 'information concerning his or her person.'"  *Id*. at 28-29; JA 39-40 (quoting *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1125 (D.C. Cir. 2004)).

The court further found PLN's interest "in being better able to match certain documents with certain other documents," was not "a proper public interest under Exemption 6."  *Id*. at 30; JA 40.  It held that, without "a well-publicized scandal or other information suggesting agency misconduct," the public interest in learning how many tax dollars went to settling claims against BOP employees and officials did not outweigh the privacy interests implicated by "confirmation that particular individuals suffered deaths or losses, and disclosure of details of various types of discrimination."  *Id*. at 30-31; JA 41.  As the court held reliance on Exemption 6 was proper, and finding that the *Vaughn* indices had applied both Exemption 6 and 7(C) to each of the records still in issue, it found it unnecessary to determine whether the Bureau satisfied Exemption 7(C).  *Id*. at 27 (citing *Coleman v. Lappin*, 607 F.Supp.2d 15, 23 (D.D.C. 2009)), 31; JA 38, 42.  PLN timely appealed.

## STANDARD OF REVIEW

This Court exercises *de novo* review over grants of summary judgment in FOIA cases.  *Multi Ag Media LLC v. Department of Agric.*, 515 F.3d 1224, 1227

14

(D.C. Cir. 2008). This requires the Court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are … exempt form disclosure under the [Act]." *Id*. *See also* 5 U.S.C. § 552(a)(4)(B) (placing "burden [] on [] agency to sustain its action"). An agency may sustain its burden by means of affidavits below, but only "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 1993). The agency may instead (or also) rely on *Vaughn* indices, but only under the same standards of specificity, and also only in the absence of contradictory evidence (or bad faith). *E.g.*, *Center for Auto Safety v. EPA*, 731 F.2d 16, 22 n.8 (D.C. Cir. 1984).

## SUMMARY OF ARGUMENT

The district court erred in "categorically" holding names and other identifying information were properly redacted by BOP under FOIA Exemption 6, and by lumping dissimilar individuals together in its privacy analysis. On the privacy side of the balance that Exemption 6 requires, no effort was made by the court, or BOP, to analyze the specific facts of each record. The court improperly conflated the privacy interests of BOP wrongdoers with those of FTCA, EEOC and MSPB claimants, viewed, *e.g.*, contracting salmonella the same as being sexually assaulted, and treated all forms of discrimination identically. It also ratified BOP

15

showings that were limited to generalized and conclusory rationalizations that did not analyze the consequences of identifying the individuals in question, despite there being a wide range of circumstances and potential privacy interests at stake.

The district court also erred on the public interest side of the Exemption 6 balance.  It established early in the case that PLN seeks records on events that occurred within BOP facilities that will provide insight to the public about how its federal prisons are managed and operated, and how its tax dollars are spent.  Yet in the end, the court ignored the ways in which PLN showed how names that were withheld are critical in gaining insight into agency operations.  It insisted this was inconsequential without a "scandal," contrary to this Court's precedent and to the fact that BOP negligence and misconduct permeate the records at issue.  It also failed to consider that the records are the sole source for the insights PLN seeks, and that they explain payouts from public funds, a matter of interest to all citizens.

Further, the court refused to credit how names and identifying information facilitate newsgathering and reporting that leads to providing the public even greater insight into BOP operations.  It improperly held that the extent to which the information will allow PLN to undertake further research, develop greater insights into agency operations, and report on them, was not a proper consideration.  This directly contradicts not only recent First and Eleventh Circuit precedent, but also this Court's longstanding acknowledgement that FOIA privacy analyses may con-

16

sider how the disclosure of the identities of public employees can provide leads for reporters seeking to ferret out what the government is "up to."

Finally, as the district court upheld the redactions under Exemption 6, it did not conduct any analysis under Exemption 7(C), the other justification BOP advanced for withholding, so there is no basis thereunder for affirming on alternate grounds. In any case, the records at issue do not satisfy the Exemption 7 threshold of having been compiled for law enforcement purposes. They predominantly consist of complaints and similar material generated by claimants and not BOP, and settlement agreements and releases designed to resolve claims rather than to "investigate" anything, and were never part of any "law enforcement" activity. Additionally, the balance of privacy and public interests under Exemption 7(C) favors disclosure for the same reasons it is required under Exemption 6.

## ARGUMENT

The district court properly identified the balancing test that Exemption 6 requires, *PLN IV*, 954 F.Supp. 21 at 28; JA 39, but applied it so as to relieve BOP from making the necessary fact-specific showings, in favor of allowing it to lump individuals together, whether they were BOP wrongdoers or were victimized by them, and regardless of the nature of the harm inflicted and suffered. In retrospect, it is clear that relatively early on, the district court improperly sought to "categorically conclude" whether BOP's redactions could be sustained. *See PLN*

17

*III*, 780 F.Supp.2d at 44; JA 232.  The court pushed the Bureau for individualized justifications, but ultimately ratified a showing that was far too broad-brushed in claiming to balance the privacy and public interests that invoking Exemption 6 requires.  Allowing the Bureau to deny PLN access to individuals' identifying information on that basis was thus error and should be reversed.

There is no dispute that "[p]roviding information material for monitoring the Government's activities is a core purpose of FOIA." *Arieff v. Department of Navy*, 712 F.2d 1462, 1468 (D.C. Cir. 1983). Stated differently, FOIA seeks to "assist citizens in discovering 'what their government is up to.'" *Center for Int'l Envtl. Law v. USTR*, 237 F.Supp.2d 17, 22 (D.D.C. 2002) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  As to personal information in particular, and given the "presumption of openness inherent in FOIA," *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998), Exemption 6 allows withholding records only if disclosure will cause a "*clearly* unwarranted invasion of personal privacy." *Stern v. FBI*, 737 F.3d 84, 91 (D.C. Cir. 1984); 5 U.S.C. § 552(b)(6).  To decide what constitutes a "clearly unwarranted privacy invasion," the Court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *National Ass'n of Home Builders v. Norton*, 309 F.2d 26, 32 (D.C. Cir. 2002) (internal quotation omitted). The burden remains on the government to justify any withholdings. *Id*.

This burden is substantial, as "[c]onsistent with the Act's goal of broad disclosure, [FOIA] exemptions have been consistently given a narrow compass." *DOJ v. Tax Analysts*, 492 U.S. 148, 151 (1989). This is particularly true here, where under Exemption 6, the Bureau must overcome a "presumption in favor of disclosure that is as strong as can be found anywhere in the Act." *Multi Ag Media*, 515 F.3d at 1227. That BOP must show not only that privacy is implicated, but that any invasion is "clearly unwarranted," is specifically intended to "reflect[] … carefully considered congressional policy favoring disclosure," and also that "[o]n the other side of the balance, there is a presumption favoring release at the outset." *Southern Utah Wilderness Alliance, Inc. v. Hodel*, 680 F.Supp. 37, 39 (D.D.C. 1988) (citing *Ditlow v. Schultz*, 517 F.2d 166, 169 (D.C. Cir. 1975)).

Courts accordingly "impose a substantial burden on an agency seeking to avoid disclosure through the FOIA exemptions. As such, exemptions from disclosure must be narrowly construed and conclusory and generalized allegations of exemptions are unacceptable." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). An agency's showing also will not suffice if it "merely recit[es] statutory standards" or is "too vague and sweeping." *Billington v. DOJ*, 233 F.3d 581, 584 (D.C. Cir. 2000) (quoting *Campbell*, 164 F.3d at 30). *See also National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 680 (D.C. Cir. 1976) ("Conclusory and generalized allegations are [] unacceptable as a means of sustaining the burden

19

of nondisclosure … since such allegations necessarily elude the beneficial scrutiny of adversary proceedings, prevent adequate appellate review and generally frustrate the fair assertion of rights under the Act.").

The Bureau's insistence here on redacting personal information from FTCA, EEOC and MSPB claim records resulted in a time-consuming process that denied PLN access to information that would "permit the public to decide for itself whether government action is proper." *Washington Post*, 690 F.2d at 264.  As even the district court acknowledged early in this case, PLN seeks information about "specific events that occurred within BOP facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended." *PLN I*, 436 F.Supp.2d at 26; JA 57.  But without the identifying information the district court allowed BOP to withhold, there is no way for PLN or the public to see how the "specific events" tie together, to understand trends to which they contribute, or to seek additional information from outside sources that can explain and amplify public understanding of the government conduct to which the records pertain.

## I.   FOIA EXEMPTION 6 HAS NOT BEEN PROPERLY INVOKED TO ALLOW BOP TO WITHHOLD INDIVIDUALS' NAMES AND RELATED IDENTIFYING INFORMATION

The Bureau relied upon, and the district court ratified, applications of FOIA Exemption 6 that were far more generic and broad-brushed than the Act or this

20

Court's precedent allows. The district court properly identified the balancing test that Exemption 6 requires, *PLN IV*, 954 F.Supp. 21 at 28; JA 39, but no effort was made by the court, or BOP, to analyze the privacy and public interests relevant to the specific facts of each record, as the law requires. Salmonella was treated the same as sexual assault, all discrimination was treated the same, and the court viewed BOP tortfeasors and the parties they harmed as having the same privacy interests. Consequently, the district court's analysis was erroneous because "a categorical approach is appropriate only if a case fits into a genus in which the balance characteristically tips in one direction." *Citizens for Responsibility & Ethics in Washington v. DOJ*, __ F.3d ___, 2014 WL 1284811, at *8 (D.C. Cir. Apr. 1, 2014) ("*CREW*"). This also resulted in generally giving entirely too much weight to the privacy interests at stake in the records at issue, and short shrift to the public interest in the insights that the redacted information will provide, and to which it can lead, and ultimately to the BOP accountability such disclosure would promote.

At the outset, it is vital to keep the focus on specifically what PLN sought, what remains at issue, and the particular interests implicated. PLN sought records relating to payments by BOP from public funds as a result of lawsuits or claims against the agency or its personnel. At bottom, this meant cases where payment was made based on either alleged commission of a tort by BOP or its personnel (FTCA claims), some form of employment discrimination (EEOC claims), or

impermissible adverse employment action (MSPB claims); it necessarily excluded claims that did not result in BOP payouts. Ultimately, BOP withheld identifying information only in records where administrative complaints could not be linked to litigation that made the identity of the complainant and his or her alleged injury a matter of public record. *PLN IV*, 954 F.Supp.2d at 29; JA 40.

That leaves instances where BOP documents are the exclusive records of individuals who filed FTCA, EEOC or MSPB claims against the agency that public funds were paid to resolve, due to merit, to avoid embarrassment, or for other reasons. The information withheld involves two categories of individuals: parties asserting claims of wrongdoing (and perhaps witnesses to it), and BOP personnel who caused the alleged harm. The information implicates the public's interest in understanding how BOP's discharge of its duties led to claims BOP deemed to have enough merit, or presented other reasons, for payments to be made from public funds, and the propriety of BOP's decision to use public funds in each of those instances. It also implicates what the Bureau did or is doing to rectify or at least limit instances of such improper and perhaps unlawful conduct. It is against this backdrop that BOP's invocation of Exemption 6 and the district court's ratification of it must be evaluated. Put in this proper perspective, it is clear the district court demanded far too little of BOP, and that it thus erred in holding the Bureau carried its burden to justify its redactions under Exemption 6.

22

### A.     The District Court Erred in Summarily Accepting the BOP's Broad-Brush Assertion of Privacy Interests

The district court's two-paragraph analysis of Exemption 6's personal privacy factor vastly oversimplified the inquiry, and generally overstated the privacy interests at stake.[13]  In summarily upholding BOP's redactions, the district court erred in at least three respects.  First, it failed to differentiate the privacy interests of individuals who *claimed harm* from the actions of BOP personnel (and witnesses thereto), from those of BOP employees who *inflicted the harm*.  Second, it upheld withholding identifying information of BOP personnel accused of wrong-doing – and in particular, accusations made to "go away" through payments of public funds – based on conclusory and generalized rationalizations that injuries, loss or death occurred.  Third, it ratified BOP's redactions based on analyses of the privacy interests that made no attempt to qualitatively distinguish among privacy interests of lesser or greater degrees of sensitivity, *e.g.*, disclosing that a person had salmonella, in contrast to disclosing that someone, *e.g.*, was sexually assaulted. Each of these reasons, standing alone, constitutes reversible error; together they are mutually reinforcing and collectively show the decision below must be vacated.

---

[13]  *PLN IV*, 954 F.Supp.2d at 28-29; JA 39-40.  Actually, the substance of the district court's analysis of the personal privacy interest comprised but a single paragraph – the other simply responded to concerns that BOP revealed identifying information in some instances but withheld it in others.  *See id*.

1.    **Redaction of Personal Information for BOP Personnel Implicates Different Privacy Interests from Redactions Pertaining to Claimants and Witnesses**

The district court erred by conflating the interests of BOP employees with those of FTCA, EEOC and MSPB claimants.  The district court observed that the Bureau "relied on Exemption 6 to withhold names and personal identifying information that would reveal the identity of a person related to claims filed … pursuant to … FTCA" and "related to the … EEOC or [MSPB]."  *PLN IV*, 954 F.Supp.2d at 28; JA 39 (internal quotation omitted).  This was permissible, the court held, as:

- BOP "considered … that disclosing names or other [] identifying information would specifically disclose *injuries, death or losses suffered* by individuals" as to the FTCA claims, and

- BOP "conducted a similar analysis with respect to … information related to EEOC claims and [MSPB] claims, observing that the fact that a claim was filed discloses that a specified individual has alleged that he or she *suffered some form of discrimination*."

*Id*. (internal quotation omitted; editing and emphases added).  This was essentially the whole of the district court's analysis on this issue.  *Id*.

The core problem with these holdings is that they simply have no application to BOP employees who engaged in or were accused of wrongdoing.  For example, BOP proffered, and the district court held, that disclosing names of BOP personnel found in FTCA records would reveal "injuries, death or losses" that were suffered.  *Id*.  But the BOP tortfeasors in the FTCA records did not "suffer" those harms –

24

they caused (or allegedly caused) them.  The privacy interest the court analyzed thus had nothing to do with BOP employee tortfeasors whose names and identifying information were withheld.

Similarly, the Bureau proffered, and the court accepted, that disclosing names of BOP personnel in EEOC and MSPB claim records would show that individuals "alleged … or … suffered … discrimination."  *Id*.  While that may be true of BOP employee *claimants*, the BOP personnel who *committed* (or allegedly engaged in) the discriminatory conduct neither "alleged" nor "suffered" discrimination.  Further, the cases cited below to support the personal privacy analysis involved only information about individuals who claimed misconduct by government personnel, not any wrongdoers.  *See id*. (citing *Judicial Watch*, 365 F.3d at 1125; *Wilson v. DOT*, 730 F.Supp.2d 140, 156 (D.D.C. 2010); *Horowitz v. Peace Corps*, 428 F.3d 271, 279-80 (D.C. Cir. 2005)).

This failure to consider the privacy interests of BOP personnel who were not claimants separately from the interests of FTCA, EEOC and MSPB claimants is a critical – and reversible – oversight.  First, as this Court has recently reaffirmed, public officials "may have a somewhat diminished privacy interest" under FOIA's personal privacy exceptions.  *CREW*, 2014 WL 1284811, at *6.  Thus, any analysis

25

under Exemption 6 that equates the privacy interests of agency personnel with those of non-employees is, at best, incomplete.[14]

Second, by tying the privacy analysis solely to injuries, deaths, losses and discrimination suffered by FTCA, EEOC and MSPB claimants, the district court did not require *any* privacy interest for non-claimant BOP personnel. This alone renders BOP reliance on Exemption 6 for redactions of names and identifying information for non-claimant BOP personnel improper. To the extent there is *any* public interest in the disclosure of the names and identifying information – and it is ample, as shown *infra* at § I.B – it necessarily compels disclosure, insofar as there is nothing on the privacy side of the balance. *Multi Ag Media*, 515 F.3d at 1229 ("If no significant privacy interest is implicated ... FOIA demands disclosure.").

The district court's analysis that examined only privacy interests that pertain to those who suffered tortious or discriminatory conduct also means it failed to address the fact that BOP's showings for non-claimants were limited to *ipse dixits* that revealing names of staff members alleged to have engaged in misconduct will cause clearly unwarranted invasions of privacy. *See supra* 9-12 & *supra* 19-20

---

[14]   The above-quoted portion of the district court's analysis of the asserted invasion of personal privacy also treats deaths categorically with injuries, losses, and allegations of discrimination, *see supra* 24 (quoting JA 39), even though the Exemption 6 privacy interest calculus changes with respect those who have passed on. *See*, *e.g.*, *Schecker v. DOJ*, 349 F.3d 657, 661-62 (D.C. Cir. 2003).

(citing *Morley, Billington* and *Kleppe*).  This is significant, as the Bureau's *Vaughn*

index in this regard offers only the kinds of conclusory assertions and boilerplate

language that this Court (and others) have held cannot suffice.  *Id*.  Proper review

of these claims under Exemption 6 (and 7(C)) should have led to their rejection.

>  **2.    The Asserted Privacy Interests of BOP Personnel Against Whom Claims Were Made and Settled Via Payment of Public Funds Cannot Justify Nondisclosure of Their Personal Information**

The district court's failure to properly scrutinize the privacy interests that the

Bureau advanced was exacerbated by the fact that it is difficult to postulate privacy

interests for BOP personnel who engaged in or were accused of misconduct.  At

the outset, BOP's showing suffers here, as well, from a failure to differentiate.

Where the *Vaughn* index addresses redactions of names and personal information

for agency personnel, it lumps together officials who engaged in misconduct (or

were alleged to have done so) with those who merely witnessed it.  Dkt. 111-1,

Final *Vaughn* Index, at 12, 15-17; JA 1353, 1356-58.  It should go without saying

that the privacy interest applicable to the fact that someone committed a tort or

engaged in discrimination, or was alleged to have done so, is very different from

that in simply having borne witness to such misconduct.

Moreover, for both such categories of agency personnel whose names and

identifying information were redacted, BOP's justifications under Exemption 6

27

were woefully deficient (and, again, were not analyzed at all by the district court).

For BOP employee witnesses to conduct that was, or was alleged to be, tortious or

discriminatory, the *Vaughn* index simply repeats nearly verbatim, for each record

with witness information, statements to the effect that "revealing the name of staff

members … who are alleged witnesses … would constitute a clearly unwarranted

invasion of personal privacy." *Id.*  No effort was made to "discuss the conse-

quences of disclosing the sought-after information," *King v. DOJ*, 830 F.2d 210,

223-24 (D.C. Cir. 1987), or even to characterize the privacy interest.  Rather, BOP

offered only the kind of "reiterat[ion] of legal standards" that this Court has held

cannot suffice.  *Id*. at 221.

　　While personal information need not be especially intimate or embarrassing

to *trigger* Exemption 6 in the first instance, *e.g.*, *New York Times Co. v. NASA*, 920

F.2d 1002, 1006 (D.C. Cir. 1990) (*en banc*)), a *substantial* privacy interest inheres

only when information divulges something revealing or likely to lead to "embar-

rassment," "disgrace" or "practical disabilities such as loss of employment or

friends."  *Department of Air Force v. Rose*, 425 U.S. 352, 377 (1976).  Accord-

ingly, characterization of the privacy interest is necessary to assess its weight

against the public interest in disclosure.  *Hooker v. HHS*, 887 F.Supp.2d 40, 60-61

(D.D.C. 2012) ("merely asserting in conclusory terms that disclosure of [] infor-

mation would constitute an invasion of privacy … failed to articulate a substantial

privacy interest") (applying *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Nonetheless, the district court relieved BOP of that duty.

The district court also failed to require that BOP provide sufficient detail on the privacy interests in withholding the personal information of BOP employees who committed torts or discriminated, or who were accused of doing so. The *Vaughn* index simply repeats variations on the theme that "revealing the name of staff members merely alleged to have engaged in discriminatory conduct … would constitute a clearly unwarranted invasion of privacy," without any explanation why that is the case. Dkt. 111-1, Final *Vaughn* Index, at 12, 15-17; JA 1353, 1356-58. The Bureau's proffer is deficient in the first instance in that it says nothing about BOP personnel who actually engaged in misconduct, as opposed to "merely [having been] alleged to have" done so. As should be self-evident, the "Government should not keep information confidential merely because public officials might be embarrassed by disclosure, [or] because errors and failures might be revealed." *Freedom of Information Act*, Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (2009). And the fact that BOP personnel were "merely accused" is not decisive under Exemption 6. *See*, *e.g.*, *Arieff*, 712 F.2d at 1468 (analyzing "increased speculation as invasion of privacy").

Where an agency withholds identifying information of its personnel who were accused of wrongdoing – and especially where, as here, it has resulted in pay-

29

outs from public funds – analyses like that conducted below cannot sustain non-disclosure under FOIA.  If "the purpose of FOIA is to permit the public to decide for itself whether government action is proper," *Washington Post*, 690 F.2d at 26, the personal information of alleged governmental bad actors should not trigger significant privacy interests simply as a matter of course, as the district court seems to have held.  Federal government employees' privacy interests are diminished where they have been investigated for misfeasance relating to the performance of their official duties.  *Providence Journal v. Department of Army*, 981 F.2d 552, 568 (1st Cir. 1992) (citing *Stern*, 737 F.2d at 92).  *Cf. ACLU v. DOJ*, 655 F.3d 1, 7 (D.C. Cir. 2011) (asking "just how much of a privacy interest a defendant retains regarding the facts of [a] … public guilty plea" and noting "disclosure of … public pleas is at the lower end of the [] spectrum.").

While the privacy interest may be stronger if the employee is exonerated, *e.g.*, *McCutcheon v. HHS*, 30 F.3d 183, 188 (D.C. Cir. 1994), the only records at issue here, as noted, are those where BOP paid public funds to resolve claims, which hardly suggests "exoneration."  If the BOP employee was exonerated, there would be little reason to pay out public monies.  In that case, records reflecting as much would not have been deemed responsive to PLN's FOIA request, *see supra* 21-22, and would not be among those still in dispute.

### 3.    The Privacy Interests of FTCA, EEOC and MSPB Claimants Cannot Justify Categorical Nondisclosure of Personal Information

The district court also let the Bureau off the hook too easily on the asserted privacy interests of the FTCA, EEOC and MSPB claimants (and non-BOP third parties).  While there may well be sensitive information among the redactions that rises to a level warranting Exemption 6 protection,[15] it is difficult to tell that from – or to justify – BOP's categorical approach that the district court sanctioned.  As this Court has explained:

> Exemption 6 claims … can be made for information pertaining to a wide range of activities.  For each of these categories of information, the privacy interest may be very different.  This is why a categorical rule forbidding disclosure … is invalid.  The privacy interest at stake may vary depending on the context in which it is asserted.

*Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).

In the first instance, as elsewhere, the reasons for invoking Exemption 6 repeat the same general mantras – *i.e.*, for tort claims, that disclosure would reveal claimants suffered injuries, death or losses, and the amounts BOP paid, and poten-

---

[15]    However, it should be obvious that, as third party (non-BOP personnel) witnesses whose identifying information the Bureau withheld under Exemption 6 did not suffer any injury, death, loss, or discrimination, such harms thus cannot serve as a basis for any privacy interest the Bureau advances on their behalf, just as with their BOP-employee counterparts.  *See supra* 25-26, 27.

31

tially cause stigma; and for EEOC and MSPB claims, that claimants alleged and/or suffered discriminatory treatment.  Dkt. 111 at 6-8; JA 1334-36.  These kinds of high-level averments epitomize what courts reject as agency showings consisting of no more than "conclusory and generalized allegations" that are "unacceptable." *Morley*, 508 F.3d at 1114.  While it may be "likely that some of the requested information [still in dispute] will be exempt from disclosure," that "does not justify the blanket withholding" of all names and identifying information.  *CREW*, 2014 WL 1284811, at *8.  To defend a categorical approach, an agency "must at least supply some convincing reason why no matter what the context, … a privacy interest trumps any possible public interest advanced by disclosure," *Armstrong*, 97 F.3d at 582, something the Bureau did not – and could not – do here.

Significantly, the Bureau's categorical approach makes it impossible to determine, for each claimant's redacted identifying information, "the extent of the privacy interest or the consequences that may ensue from disclosure," *Morley*, 508 F.3d at 1128, and whether the threat to privacy is "more palpable than mere possibilities." *Rose*, 425 U.S. at 381 n.19.  If "the privacy threat depends on the individual characteristics that [] disclosure [would] reveal[]," *National Home Builders*, 309 F.2d at 36, simply stating a claimant suffered "injury," or "loss," or "discrimination" does not offer the requisite insight.  This is particularly the case in that privacy interests that typically support Exemption 6 redaction tend to implicate

information where disclosure is likely to cause disgrace, embarrassment, stigma, harassment, or loss of friends or employment.  *E.g.*, *Rose*, 425 U.S. at 377; *Multi Ag Media*, 515 F.3d at 1228.

As BOP itself explained several rounds earlier in summary judgment:  "Tort Claims … have an indeterminate range of subject matter from dinged car, to a slip in [*sic*] fall, to claims of physical or sexual assault."  Dkt. 62-1 at 21 & Dkt. 62-3, Moorer Decl.; JA 142, 146-50.  It should go without saying that an individual's privacy interest in having a car dinged or suffering a slip-and-fall differs greatly from that in having been sexually assaulted.  Review of the FTCA documents from which personal identifying information was redacted reveals claims involving harms ranging from the fairly innocuous (from a privacy perspective) – *i.e.*, contracting salmonella, suffering a torn bicep playing basketball, receiving the wrong eye medicine[16] – to those far more serious and sensitive, such as sexual abuse, suicide and death.[17]

---

[16]   Dkt. 110-8 at 34; Dkt. 110-88; Dkt. 110-95; JA 348, 1120-23, 1196-1200.

[17]   Dkt. 110-7; Dkt. 110-52; Dkt. 110-58; JA 301-14, 820-31, 877-87.  As may be imagined, there are also harms falling along this spectrum.  *See*, *e.g.*, Dkt. 110-16 (eye injury); JA 446-54; Dkt. 110-89 & Dkt. 110-100 (injuries from falling vent and ceiling slab); JA 1124-40, 1252-64; Dkt. 110-104 (detained in excess of sentence); JA 1296-1301; Dkt. 110-93 (failure to treat hernia); JA 1184-90.

No effort was made, for any of these harms, to explain *how* disclosure would result in an invasion of privacy. While that perhaps may be surmised for some harms that befell claimants, especially those of a more serious nature,[18] nothing in the record indicates the "consequences that may ensue" from disclosing, *e.g.*, that a claimant tore a bicep playing basketball. *Morley*, *supra*. The Bureau failed to delve into those details, and the district court erred by failing to demand that specificity, and by instead "categorically" sustaining BOP's redactions.

The same problem of lack of specificity and nuance afflicts the redactions in the EEOC and MSPB claim documents. Here, too, the harms run the gamut from disparate treatment suffered as a non-minority and gender-based disparate pay,[19] to being subject to racial epithets, vile sexual harassment, and unwarranted photographing of the genitalia.[20] Redactions even cover instances of retaliation based not on anything done to the claimant, but for testifying to harm suffered by others. Dkt. 110-20; JA 473-77. The privacy interest implicated by a claimant, *e.g.*,

---

[18] *But cf. Carter v. Department of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987) ("Withholding information to prevent speculative harm is [] contrary to the statute's policy favoring disclosure.").

[19] Dkt. 110-11; JA 417-21; Dkt. 110-34; JA 590-611.

[20] Dkt. 110-60; JA 896-905; Dkt. 110-16; JA 446-54; Dkt. 110-12; JA 422-31.

suffering an adverse job action as retaliation for testifying to misconduct is very different from that implicated by, *e.g.*, being offensively and heinously harassed.

Painting all FTCA, EEOC and MSPB claims with the same injuries-death-losses-discrimination broad brush does not allow proper analysis of the privacy interests presented by each claim and, therefore, by each discrete redacted record. As this Court recently reaffirmed:  "Categorical treatment … may be used only when the range of circumstances included in the category characteristically support an inference that the statutory requirements for exemption are satisfied."  *CREW*, 2014 WL 1284811, at *2.  Exemption 6 was intended to protect "disclosures … of an intimate personal nature," such as "legitimacy of children … , medical condition, welfare payments, alcoholic consumption, family fights, and reputation." *Washington Post Co. v. DOJ*, 863 F.2d 96, 100 (D.C. Cir. 1988).  The identifying information of complainants and witnesses related to claims against BOP for which payment was made with tax dollars are not automatically the kinds of "intimate details" or "damaging information" that implicate significant privacy interests.  *National Home Builders*, 309 F.3d at 32.  The district court's blanket holding to the contrary cannot stand.

**B.     The Public Interest in Understanding BOP's Payments of Public Funds to Remedy, or Forestall Investigation of, Misconduct by Agency Personnel Outweighs the Privacy Interests of BOP Personnel, as well as Those of Claimants and Witnesses in the Majority of Cases**

The district court also erred on the other side of the Exemption 6 equation in holding the public interest in learning redacted names and other identifying information in the disputed records does not outweigh individuals' privacy interests. *PLN IV*, 954 F.Supp.2d at 31; JA 41-42.  The court identified some of the salient legal principles, but misapplied them.  And in perhaps its biggest oversight, it refused to credit the extent to which names and identifying information facilitate newsgathering and reporting that lead to granting the public even greater insight into "what their government is up to."  *Reporters Comm.*, 489 U.S. at 773.  The court "drastically understated the public interest when it acknowledged there may be some minimal public interest."  *CREW*, at *8 (internal quotation omitted).  *Compare PLN IV*, 954 F.Supp.2d at 29; JA 40 ("there may be a public interest").

**1.     The District Court Took Too Narrow a View of the Public Interest in Identifying Information**

The district court's ultimate conclusion is somewhat ironic in that, early in the litigation, it held (and it should be the law of the case[21]) that PLN seeks infor-

---

[21]  *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("law-of-the-case [] rests on a simple premise: the same issue presented a second time in the same case in the same court should lead to the same result.") (quotation omitted).

mation about "specific events that occurred within BOP facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended." *PLN I*, 436 F.Supp.2d at 26; JA 57. *Cf. Pell v. Procunier*, 417 U.S. 817, 831 n.7 (1974) ("conditions in this Nation's prisons are a matter that is both newsworthy and of great public importance."). PLN demonstrated that the public has a legitimate and substantial interest in how the nation's prisons are managed, and that the requested information provides insight into how well, or how poorly, BOP performs its functions. Dkt. 110-1 at 8-9, 10-11, 13-14, 18; JA 248-51, 253-54, 258. This much, it appears, the district court accepted.

But PLN also showed the public has a strong interest in knowing exactly which officials are involved in wrongful conduct on the public dime, and the offices they hold. *Id.* Without identifying information, there is no way to know whether officials have been accused multiple times of serious offenses, how much taxpayer money has been used to resolve claims against those individuals, and whether they continue to be employed by BOP. *See PLN IV*, 954 F.Supp.2d at 30; JA 40-41. There is thus no way to identify particularly "bad actors" who may have cost and/or continue to cost the government – and taxpayers – significant funds, and who are thus of questionable fitness to continue to serve in their positions.

There is also no way to identify trends among BOP personnel with respect to any specific type(s) of misconduct, or whether particular Bureau officials are guiding efforts to quietly settle cases. *See* Dkt. 78-3, Decl. of Paul Wright, ¶¶ 17-18; JA 200-01. Or, put another way: "Disclosure of the records would likely reveal much about [BOP]'s diligence" and "exercise of its [] discretion," *i.e.*, "whether the government … pulled its punches." *CREW*, 2014 WL 1284811, at *6. *See also Multi Ag Media*, 515 F.3d at 1232 (describing public interest in whether an agency "is catching cheaters and lawfully administering … programs"). The court below acknowledged the public interest in learning identities of public servants involved in wrongdoing, *id*. (quoting *Stern*, 737 F.3d at 92), but simply refused to credit how using the redacted names speaks to that interest.[22]

Such uses are a far cry from knowing simply for the benefit of knowing or, *e.g.*, for completeness' sake, "*who* the public servants are." *Stern*, 737 F.2d at 92 (quoted *PLN IV*, 954 F.Supp.2d at 30; JA 41). As *Stern* held, there is a public interest in knowing "that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner." *Id*. Here, there is no doubt that Bureau personnel identified in records reflecting BOP pay-

---

[22]  Even as to claimants, identifying information is necessary to see if there are, *e.g.*, serial claimants, and/or payment for bogus claims, where BOP expended public funds perhaps unnecessarily.

outs for allegations of misconduct are "accountable."  But there is no way to tell, without the information the district court allowed BOP to withhold, whether those individuals have been "dealt with appropriately," whether they have gone on to re-offend, and/or whether they are being shielded by higher-ups.[23]

Indeed, although the district court recognized the public interest in knowing which public officials are involved in alleged misconduct and its seriousness, and the "strong public interest in monitoring the[ir] conduct and actual performance," it held those interests could not overcome the privacy interests at stake "given [] the lack of … information suggesting [] agency misconduct."[24]  But the documents at issue involve scores of claims of misconduct by Bureau personnel, as well as other BOP failings that *the Bureau itself conceded or otherwise ultimately declined to defend* and instead paid to resolve.  The "misconduct" is writ large across the pages of the records in question, and is reinforced by BOP's paying out on each claim.

---

[23]    *See id*.  Notably, *Stern* was a "close case," *id*. at 93, and was resolved in favor of allowing the withholdings it did, partly because the "lower level employees" in question "were not in any sense directly responsible" for misconduct, and were "culpable only for inadvertence and negligence."  *Id*. at 92.  Here, where BOP paid out on all claimed wrongdoing reflected in the documents at issue, the same cannot be said.  The reliance on *Stern* below was thus not on all fours.

[24]    *PLN IV*, 954 F.Supp.2d. at 31; JA 41-42 (citing *Coleman v. Lappin*, 680 F.Supp.2d 192, 196 (D.D.C. 2010); *Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir. 1980)).

The district court's insistence on a "scandal" before the balance of interests tips, in reliance on *Stern* and *Beck v. DOJ*, 997 F.2d 1489 (D.C. Cir. 1993), misapplied the law. *PLN IV*, 954 F.Supp.2d. at 30-31; JA 41-42. *Beck* itself states that FOIA "does not require that [a requestor] proved that a scandal exists; it merely requires that a claim of public interest be based on the known facts." 997 F.2d at 1494. The myriad "known facts" in the records at issue here speak loudly to the public interest.

As this Court later explained, the need for such "extra weight" as a scandal arises only under Exemption 7(C), because there, "unlike Exemption 6, the balance is not tilted emphatically in favor of disclosure." *Jefferson v. DOJ*, 284 F.3d 172, 180 (D.C. Cir. 2002). There can even be "sufficient reason for disclosure independent of any impropriety" in that how an agency handles violations of law is "properly the subject of public concern whether or not the policy in question is lawful." *CREW*, 2014 WL 1284811, at *7 ("Whether government impropriety might be exposed … is beside the point.") (internal quotation omitted). *See also ACLU*, 655 F.3d at 14.

Even if something like a "scandal" were necessary, there was material in the record below pointing in that direction. Dkt. 110-4, Final Wright Decl., ¶¶ 9-11; JA 271; & Dkts. 110-108, 110-109 & 110-110. Included in these materials was the EEOC Final Program Evaluation Report on BOP, which found Bureau employees

40

have an unusually heightened fear of retaliation for pursuing EEO violations, and noted deficiencies in the Bureau's EEO program. *Id*. Dkt. 110-8 at 1. *See also* Dkt. 110-1, PLN Fifth Mot. for Sum. J. at 8; JA 248. Press accounts described, *e.g.*, allegations of "rampant retaliation against [BOP] employees who dare to complain about discrimination in the agency." *Id*. Dkt. 110-109, at 1. They also reported on efforts by the American Federation of Government Employees Council of Prison Locals to have the Attorney General and Congress hold BOP leadership accountable for the "climate of retaliation" that prevailed. *Id*. Dkt. 110-110.

Another factor tilting the balance in favor of the public interest and toward disclosure, which the district court did not consider, is the extent to which the records at issue are the only source of the information withheld. As noted, BOP released documents for claims that gave rise to a public record. *See supra* 22. That means that for the materials now at issue, there is no public record of the matters discussed in the disputed documents. "[U]nder the law of this circuit consideration of alternative sources of information is [] one factor that agencies and reviewing courts … consider in determining whether privacy-implicating information must be disclosed." *DOD v. FLRA*, 964 F.2d 26, 28 (D.C. Cir. 1992). *See also id*. at 29 ("agencies and courts consider on the public interest side of the equation [] the extent to which there are alternative sources of information"). The district court ignored this "law of the circuit," and this factor, in the present case.

41

The district court also did not even attempt to consider that the documents at issue included only those where BOP, in fact, paid out because Bureau personnel committed a tort or engaged in discrimination, or were alleged to have done so. PLN seeks the identities of individuals who used public fora to seek redress of grievances suffered at the hands of public officials and were paid with public funds in satisfaction of judgment or settlement on those claims.  The public has an important and substantial interest in knowing the identities of those individuals and, through PLN's investigation, the nature of those claims.  *See Lardner v. DOJ*, 638 F.Supp.2d 14 (D.D.C. 2009) (Office of Pardon Attorney wrongly withheld under Exemptions 6 and 7 identities of applicants denied pardons and commutations), *aff'd*, 398 F. App'x 609 (D.C. Cir. 2010).  *See also Arieff*, 712 F.2d at 1468.

As the Supreme Court recognized, in a democracy, "the protection of the public fisc is a matter that is of interest to every citizen."  *Brock v. Pierce Cnty.*, 476 U.S. 253, 262 (1986).  Courts consistently hold that records that shed light on disbursements of government funds – even when they contain otherwise private facts – may not be permissibly withheld under Exemption 6.[25]  In *Multi Ag Media*,

---

[25] *See Washington Post*, 690 F.2d at 261.  *Cf. Washington Post v. DOJ*, 863 F.2d at 100 (Exemption 6 applies to disclosures of "an intimate personal nature," thus "information relating to business judgments and relationships does not qualify … even if disclosure might tarnish [one's] professional reputation.").

the USDA defended nondisclosure of farm acreage and related data on grounds that it offered a "snapshot" of farms' financials and shed light on farmers' financial conditions.  While this Court agreed, it found any privacy interest was trumped by the fact that "USDA uses this information in the administration of its subsidy and benefit programs, and there is a special need for public scrutiny of agency action that distributes extensive amounts of public funds."  515 F.3d at 1230, 1232.

Similarly, in *News-Press v. DHS*, 489 F.3d 1173 (11th Cir. 2007), the Eleventh Circuit considered whether records shedding light on FEMA's disbursement of disaster assistance funds – and on fraud, waste, and abuse in the course thereof – could be withheld under Exemption 6.  Deeming the public interest in monitoring fraud, waste and abuse in FEMA operations as "undeniable," "powerful," "substantial," and "enormous," the court "easily conclude[d] … that the asserted interest in learning whether FEMA is a good steward of (sometimes billions of) taxpayer dollars … is one which goes to 'the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government."  *Id.* at 1191-92, 1196, 1206.  It thus ordered the addresses of FEMA recipients released, along with the amount of assistance provided and other information.  Though the court ordered addresses released but not the names of the disaster victims themselves, it did so only because "it is possible to derive names from addresses through public records."  *Id*. at 1205.

43

2.     **The District Court Marginalized the Role of Identifying Information in Investigating and Reporting to the Public on Agency Operations**

The district court also failed to give proper weight on the public interest side of the balance to the ways in which the personal identifying information that BOP redacted would facilitate PLN reporting that will help fulfill "the purpose of FOIA [of] permit[ting] the public to decide for itself whether [BOP] action is proper." *Washington Post*, 690 F.2d at 264.  When an outside watchdog like PLN examines a particular issue – here, BOP's disposition of FTCA, EEOC and MSPB claims – it utilizes methods different from governmental oversight, and can devote considerable attention to non-traditional areas of inquiry.  Without names, records from administrative agency proceedings lose most of their analytical use.  Conversely, on receipt of unredacted documents describing BOP employee misconduct, PLN can develop additional information that sheds light on agency functions.

The district court characterized these investigative and reporting functions as interests of PLN in simply "identify[ing] complementary records" and "searching for documents based on [] names."  *PLN IV*, 954 F.Supp.2d at 29; JA 40.  But as explained above, analysis of the identifying information shines a direct light on BOP functions.  *See supra* 37-38 (identification and reporting on repeat offenders, trends in misconduct, etc., require names and identifying information).  The district court considered the extent to which names allow PLN to shed greater light on

44

BOP operations not as evidence of the public interest, but rather as a "purpose" for which records were sought that cannot factor into Exemption 6 balancing.[26]  But as this Court has explained, while the use to which agency records may be put ordinarily does not factor into analysis of whether they must be released, the need for balancing under Exemption 6 requires at least consideration of the use to which a requester might put the information that an agency seeks to withhold.  *See*, *e.g.*, *National Archives & Records Admin. v. Favish*, 541 U.S. 172 (2004).  This Court "takes derivative uses into account in evaluating … the public interest, just as both this court and the Supreme Court do in evaluating the impact of disclosure on personal privacy."  *ACLU*, 655 F.3d at 14.[27]

In any event, the district court ignored how the need here for, *e.g.*, names, is directly analogous to the press' need for identifying information in other cases where a sufficient public interest was found, on that basis, to require disclosure. Most recently, the First Circuit recognized how names provide "more than mere

---

[26]  *Id*. (citing *Judicial Watch*, 365 F.3d at 1126; *Reed v. NLRB*, 927 F.2d 1249, 1252 (D.C. Cir. 1991)).

[27]  *Cf. id*. ("in evaluating the privacy impact of the release of information, the courts have taken into consideration potential derivative uses of the information"). Indeed, it would be surpassingly odd if the public interest side of the equation could not consider such uses, where they are uses that illuminate the efficacy of government operations as targeted by the FOIA and Exemption 6 balancing.  *See id*. at 16 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 180-81 (1991) (Scalia, J., concurring)).

45

'information about private citizens … accumulated in [] governmental files [] that reveals little or nothing about an agency's [] conduct,'" but rather "enable [the press] to investigate public records …, potentially bringing to light" government operations.  *Union Leader Corp. v. DHS*, __ F.3d ___, 2014 WL 1613681, at *8 (1st Cir. Apr. 18, 2014) (distinguishing *Reporters Comm.*, 489 U.S. at 773).  Specifically, where "names would *lead to additional information* that would shed further light on critical aspects of the government's handling of its [] duties, allowing the newspaper to more fully monitor" agency conduct, the public interest tips the balance in favor of disclosure.  *Id*. at *7 (emphasis added).  *Compare PLN IV*, 954 F.Supp.2d at 29; JA 40 (identifying complementary records deemed an insufficient public interest).   In fact, the extent to which "[d]isclosure of the redacted names [would] allow the Union Leader to investigate" beyond the agency records was dispositive in *Union Leader*.[28]

Similarly, the Eleventh Circuit ordered disclosure in *News-Press* based in part on an express recognition that individuals' addresses ultimately would lead

---

[28]   *Union Leader* at *6-8.  The First Circuit concluded, as PLN argues here, that "the district court gave inadequate weight to the public interest in disclosure," where the Union Leader explained that names redacted from Customs records would enable it (and the public) to monitor agency conduct, and that without the names, it is impossible to gain full insight into the agency actions that are reflected in the records, or that occurred subsequent to their creation.  *Id*. at *6, *8.

reporters to names based on public records.  489 F.3d at 1205 (cited with approval in *Multi-Ag Media*, 515 F.3d at 1232).   Specifically, *News-Press* accepted the important role that interviewing recipients of FEMA funds played in assessing whether an agency is a "good steward" of taxpayer funds.  *Id*. at 1192-93, 1205.  *See id*. at 1192 (criticizing district court for giving "inadequate weight to the substantial light that would be shed on FEMA's activities directly from [] release of the addresses" and by extension names).   In noting that "in order to verify the appropriateness of an award [of FEMA funds], the OIG itself was often forced to interview recipients," *New-Press* recognized that follow-up by the press is similarly useful and necessary to provide insight to the public on government operations.  *Id*. at 1193 & n.22.  *See also ACLU*, 655 F.3d at 15 ("information interested parties can derive … will yield further information about [government] policy that is not now readily available" and thus advances the public interest).

This Court has also in the Exemption 6 public interest context "recognized that disclosure of names and addresses of public employees could provide leads for an investigative reporter seeking to ferret out what the government is up to." *DOD v. FLRA*, 964 F.2d at 29 (quoting *FLRA v. DOT*, 884 F.2d 1446, 1452 (D.C. Cir. 1989)).  While that interest may be "discounted" where alternative means of access to public employees exist, the discount is "slight," *id*., and does not apply here in any event, as such alternative access is not readily available.  The district court

47

improperly ignored this aspect of how the disclosure of agency records – here, names and other identifying information – will advance the public's right to know what its government is up to in the public interest analysis.  This Circuit should, building on *DOD v. FLRA*, join the First and Eleventh Circuits in recognizing that the extent to which disclosure of individuals' identifying information allows the press to further investigate and report on government functions is an important factor in the public interest analysis that must be given proper weight.

## II.    FOIA EXEMPTION 7(C) DOES NOT PERMIT WITHHOLDING

In addition to Exemption 6, BOP also improperly claimed Exemption 7(C) in redacting names and personal identifying information of claimants, witnesses, and BOP tortfeasors from the documents at issue. [29]  However, the district court did not analyze or issue a ruling whether Exemption 7(C) could apply, instead relying entirely on its erroneous finding that the documents fell within Exemption 6.  *PLN IV*, 954 F.Supp.2d at 31; JA 41-42.  The invocation of Exemption 7(C) cannot serve as an alternative ground for affirming, because none of the documents at issue were created for law enforcement purposes, and even if Exemption 7(C) applied, BOP failed to show that the release of any individual's name "could

---

[29]   Dkt. 111-1, Final Stroble Decl. & Final *Vaughn* Index; JA 1342-1477; Dkt. 111-2, Final Moorer Decl. at, *e.g.*, 7-10, 12-15, 17-18, 20-22; JA 1484-87, 1489-92, 1494-95, 1497-99.

reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), for the same reasons as are stated above for Exemption 6.

### A. The BOP Did Not Establish that the Redacted Records Were Compiled for Law Enforcement Purposes

The Bureau failed to carry its burden of showing that the records it seeks to withhold were compiled for law enforcement purposes. *CREW*, 2014 WL 1284811 at *9. In its *Vaughn* Index and declarations, BOP posited that Exemption 7(C) covered the redactions because they appear in "'investigatory files.'"[30] Despite this gloss on the documents, the information in question was in reality generated by claimants in the course of asserting claims in judicial or quasi-judicial fora – not as part of any "law enforcement" activity. In this regard, most of the records at issue encompass complaints and similar material generated by claimants, not BOP, and settlement agreements, releases, and the like, designed to resolve claims rather than to "investigate" anything. *See*, *e.g.*, *Crooker v. ATF*, 789 F.2d 64, 66 (D.C. Cir. 1986) (Exemption 7, as amended, "was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes") (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978)).

---

[30] Dkt. 110-107, Final Wright Decl., Ex. 103 (penultimate Stroble) ¶ 6; JA 1318-19; Dkt. 111-1, Final Stroble Decl. ¶ 6; JA 1346-47. *See also* Dkt. 111-2, Final Moorer Decl., ¶¶ 79, 81, 84, 87, 89, 92, 94, 96, 99, 101, 102; JA 1524-49.

The Bureau improperly contended that "it is axiomatic that a Complaint of Discrimination … and Claim for Damage, Injury, or Death … all qualify as law enforcement records" merely because they "accuse another of some level of misconduct."  Dkt. 111 at 17.  To the contrary, an agency investigation is considered to be for law enforcement purposes only if it "focuses 'directly on specifically alleged illegal acts, illegal actions of particular identified officials, acts which could, if proved, result in civil or criminal sanctions."  *Stern*, 737 F.2d at 89. Every case the BOP cited below as examples of investigatory files covered by Exemption 7(C) involved records pertaining to an investigation into criminal misconduct – not civil claims.[31]  The Bureau offered no cases that hold, *e.g.*, that tort claim records such as those at issue here have been found to be "investigatory" files properly withheld under Exemption 7(C).

The Bureau's own characterizations of the records confirm they were not compiled for law enforcement purposes.  In its *Vaughn* indices, BOP explains that the records relate to "administrative claims."  Dkt. 111-2, Final Moorer Decl., ¶ 10; JA 1482.  And even where it argued that "Tort Claim Form SF-05 is part of an investigatory record compiled for law enforcement purposes," it simultaneously

---

[31]  Dkt. 111 at 11 (citing *Ortiz v. HHS*, 70 F.3d 729, 732 (2d Cir. 1995); *Vento v. IRS*, 714 F.Supp.2d 137, 148 (D.D.C. 2010); *Ligorner v. Reno*, 2 F.Supp.2d 400 (S.D.N.Y. 1998); *Lurie v Department of Army*, 970 F.Supp. 19, 36 (D.D.C. 1997)).

admitted the forms are "filed … by the injured party … *for administrative action*." *Id*. (emphasis added).

Simply because the records at issue here address some degree of misconduct by the Bureau or its employees does not render them categorically subject to Exemption 7(C).  As this Court explained in *Stern*, the general internal monitoring by an agency of its own employees is not shielded from public scrutiny under Exemption 7, because "protection of all such internal monitoring under Exemption 7 would devastate FOIA."  737 F.2d at 89.  Consequently, where – as here – records pertain exclusively to civil claims against an agency, they do not qualify as investigatory files compiled for law enforcement purposes.  This by itself bars the Bureau from relying on Exemption 7(C) to support the redactions at issue.

### B.     The Balancing of Privacy and Public Interests Under Exemption 7(C) Compels Disclosure for the Same Reasons as are Applicable Under Exemption 6

Even if the documents are deemed to be law enforcement records, the Court must undertake essentially the same balancing of privacy interests of individuals mentioned in the records against the public interest in disclosure as conducted for Exemption 6.  *Beck,* 997 F.2d at 1491.  As with Exemption 6, Exemption 7(C) only allows BOP to refuse to disclose if it "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  However, here too, BOP failed to state with any reasonable specificity how release of the

information would create an unwarranted invasion of privacy for the individuals whose names have been redacted.  Instead, it offered only repeated conclusory averments that the "information redacted by the BOP pursuant to Exemption 7(C) is private in nature and the public need to know does not outweigh this interest."[32] And the Bureau's briefing to the lower court did not provide any further discussion as to what those privacy interests might be.  So all told, BOP offered only the kinds of generalized, vague, and sweeping statements that cannot carry its burden.  *See supra* 19-20 (citing *Morley*, 508 F.3d at 1114; *Billington*, 233 F.3d at 584).

Even insofar as the Supreme Court has concluded that "Exemption 7(C) is more protective of privacy than Exemption 6," and thus establishes a lower bar for withholding material, *DOD v. FLRA*, 510 U.S. 487, 496 n.6 (1994); *see also Favish*, 541 U.S. at 165-66, BOP cannot reach even that threshold in this case. Courts find a cognizable privacy interest under Exemption 7(C) to protect private information of investigators, witnesses, informants, and suspects in criminal matters.  *E.g.*, *Martin v. DOJ*, 488 F.3d 446, 457 (D.C. Cir. 2007).  The privacy interests at stake in this case, however, are considerably weaker than those in other

---

[32]  Dkt. 110-107, Final Wright Decl., Ex. 103 (penultimate Stroble declaration) ¶ 6; JA 1318-19; Dkt. 111-1, Final Stroble Decl. ¶ 6, JA 1346-47.  *See also, e.g.*, Dkt. 111-1, Final *Vaughn* Index at 8; JA 1349; Dkt. 111-2, Final Moorer Decl., ¶¶ 12, 14, 16, 18, 21, 23, 27, 30, 35; JA 1484-87, 1489-92, 1494, 1497-98.

Exemption 7(C) cases, because PLN seeks identifying information regarding civil claimants – not individuals' rap sheets or other confidential information being used for law enforcement purposes.  There is thus no risk that those individuals would be subjected to the stigma of involvement in a criminal matter that is typically found to support nondisclosure under Exemption 7(C).

Disclosure also is required here given the strength of the public interest in that disclosure will advance "the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *Reporters Comm.*, 489 U.S. at 772.  As explained above, the public has a well-founded interest in knowing how much money was used to settle claims against BOP employees and officials, and in being able to spot trends and otherwise ascertain how good a job the Bureau is doing in addressing the types of misconduct that are represented in the records at issue.  *See supra* § I.B.  The public interest also extends to knowing whether an investigation was comprehensive and that the agency imposed adequate disciplinary measures.  *E.g.*, *CREW*, 2014 WL 1284811, at *6.  Thus, by redacting critical identifying information concerning alleged tortfeasors, government witnesses, and claimants, BOP circumvented FOIA's essential purpose and continues to evade public scrutiny.

53

## CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment to the Director of the Federal Bureau of Prisons, and denying Prison Legal News' motion for summary judgment, should be vacated.

Dated:  April 29, 2014

Respectfully submitted,

By:  /s/ Ronald G. London
Ronald G. London
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Telephone:  (202) 973-4200
ronnielondon@dwt.com

Lance Weber, General Counsel
Human Rights Defense Center
P.O. Box 1151
Lake Worth, Florida 33460
Telephone:  (561) 360-2523
lweber@hrdc-law.org

Attorneys for Appellant

## ADDENDUM OF PERTINENT STATUTES

5 U.S.C. § 552 - Public information; agency rules, opinions, orders, records, and proceedings

\*\*\*

      (3)

         (A) \*\*\* [E]ach agency, upon any request for records which

            (i) reasonably describes such records and

            (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

\*\*\*

(b) This section does not apply to matters that are—

\*\*\*

      (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

      (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

\*\*\*

         (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, \*\*\*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 12,947 words.

Counsel relies on the computer program used to create this brief for the word count.


By:   /s/ Ronald G. London
      Ronald G. London

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on April 29, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


By:   /s/ Ronald G. London
          Ronald G. London